UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSBERT AYENI-AARONS,<br><br>Plaintiff,<br><br>v.<br><br>BEST BUY CREDIT SERVICES/CBNA, et al.,<br><br>Defendants. | No. 2:18-cv-01625-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

This action arises out of Plaintiff Osbert Ayeni-Aarons's purchase of an allegedly defective laptop computer from Best Buy with a credit card issued by Defendant Citibank, N.A. ("Citibank"). Presently before the Court is Citibank's Motion to Compel Arbitration and Stay this Action pursuant to an agreement to arbitrate between Plaintiff and Citibank. ECF No. 24. For the following reasons, Citibank's Motion is GRANTED.

**BACKGROUND[1]**

Plaintiff opened a Best Buy credit card account issued by Citibank (the "Account") in October 2013. Citibank's Mot., ECF No. 24, at 2. At the time of its opening, the

---

[1] The following recitation of facts is taken from Plaintiff's Second Amended Complaint ("SAC"), ECF No. 23, and Citibank's Motion to Compel Arbitration ("Citibank's Mot."), ECF No. 24.

1

Account was subject to an arbitration clause (the "Arbitration Agreement"), which was reflected in a Card Agreement. Citibank's Mot., ECF No. 24, at 2. On or about December 15, 2015, Citibank claims to have mailed Plaintiff a "Notice of Change in Terms and Right to Opt Out" (the "2015 Notice"), which included a new Card Agreement with an amended arbitration clause ("Amended Arbitration Agreement"). Id. Citibank's records reflect that the 2015 Notice was not returned by the postal service as undeliverable. Id. The 2015 Notice stated that Citibank is "changing your card agreement by replacing it with a new one," and that the effective date for the changes, to include changes to the Arbitration Agreement, was February 4, 2016. Id.

The fundamental dispute between these parties arises out of a transaction involving a laptop computer that Plaintiff purchased from Best Buy in Elk Grove, California on July 9, 2016. SAC ¶ 12. Plaintiff used the Account to purchase the laptop. SAC ¶ 12. Plaintiff alleges that after purchasing the laptop, he discovered that it was defective and attempted to exchange it on August 28, 2016 at Best Buy's retail store in Chico, California. SAC ¶ 16. During the exchange attempt at the Chico Best Buy, a dispute ensued between Plaintiff and the Best Buy retail employees, which resulted in the defective laptop being turned into Best Buy without Plaintiff receiving an operational laptop in return. SAC ¶¶ 14, 15. After this incident, Plaintiff claims he sought assistance from Best Buy's customer service to no avail. SAC ¶ 16. Best Buy allegedly did not return the defective laptop to Plaintiff or otherwise cancel the sale, but instead kept the laptop and continued to charge Plaintiff for the purchase. SAC ¶ 17.

When Plaintiff stopped making payments on the laptop that was no longer in his possession, negative reports regarding his credit worthiness were sent to the consumer credit reporting agencies, which caused damage to Plaintiff's credit score. SAC ¶ 17. Plaintiff thereafter filed this action on June 5, 2018. ECF No. 1. By its instant Motion, Citibank seeks to compel arbitration of the Plaintiff's claims against it pursuant to the Arbitration Agreement.

///

**STANDARD**

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. The FAA allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Valid arbitration agreements must be "rigorously enforced" given the strong federal policy in favor of enforcing arbitration agreements. Perry v. Thomas, 482 U.S. 483, 489-90 (1987) (citation omitted). To that end, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in the original).

The Supreme Court has repeatedly recognized the strong national policy favoring arbitration. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25 (1991) (FAA's "purpose was …. to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"); Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226 (1987) (FAA "establishes a 'federal policy favoring arbitration,' . . . requiring that we rigorously enforce agreements to arbitrate.'" (citations omitted); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (federal policy of FAA is one which guarantees the enforcement of private contractual arrangements).

Given this policy, it is clear that a court is obligated to liberally interpret and enforce arbitration agreements and to do so "with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Significantly, too, any doubts concerning arbitrability should be resolved in favor of arbitration. Mitsubishi Motors Corp., 473 U.S. at 624 n.13 (noting that the

appellate court "properly resolved any doubts of arbitrability"); see also Hodsdon v. Bright House Networks, LLC, 2013 WL 1499486 at *2 (E.D. Cal. Apr. 11, 2013) ("Because there is a presumption in favor of arbitration, the Court is required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.").

To determine the validity of an agreement to arbitrate, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). In assessing whether to compel arbitration, the Court may not review the merits of the dispute. Instead, the Court must limit its inquiry to three steps: (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 476-78 (9th Cir. 1991)

## ANALYSIS

### A.  Transaction Involving Interstate Commerce

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 1 defines "commerce" to mean, among other things, "commerce among the several States or with foreign nations . . . ." Id. § 1. "The 'interstate commerce' provision has been interpreted broadly, embracing any agreement that in its operation directly or indirectly affects commerce between states in any fashion." Affholter v. Franklin Cnty. Water Dist., No. 1:07-CV-0388-OWW-DLB, 2008 WL 5385810, at *2 (E.D. Cal. Dec. 23, 2008) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277-282 (1995)).

///

In this case, the parties do not dispute that the Card Agreement evidences a transaction involving interstate commerce. Indeed, the contract containing the arbitration agreements at issue is a contract for a consumer credit card between citizens of two different states—California and South Dakota. Accordingly, the transaction "involve[s] interstate commerce." See Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1175, 1177 (N.D. Cal. 2012) (compelling arbitration under the FAA based on arbitration clause contained in credit card agreement between citizens of different states); see generally Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 274-75 (1995) (interstate-commerce requirement should be construed broadly to include all activities that merely affect interstate commerce).

**B.      Existence of a Valid Agreement to Arbitrate**

The Court's second task is to determine whether there exists a valid agreement to arbitrate. Standard Fruit, 937 F.2d at 476-78; see also Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007). While the FAA expresses a strong public policy in favor of enforcing arbitration agreements, the Court must first establish that there is an agreement to be enforced. Baker v. Osborne Dev. Corp., 159 Cal. App. 4th 884, 892 (2008). "[T]he question of whether a party is bound by an agreement containing an arbitration provision is a 'threshold question' for the court to decide." Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1357 (Fed. Cir. 2004) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964)) (applying Ninth Circuit law). In determining whether an agreement to arbitrate exists, the district court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996); see also Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).

Here, the Arbitration Agreement in effect at the time that Plaintiff opened the Account contains the following language:

///

**ARBITRATION**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION, ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

**Agreement to Arbitrate:** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

ECF No. 24-2, at 9 (bolding in original). The Amended Arbitration Agreement, as allegedly provided via the 2015 Notice, contains the following language:

**ARBITRATION**

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

**Covered Claims**

- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account, or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

ECF No. 24-4, at 6-7 (bolding in original). While Plaintiff contests Citibank's contention that the Amended Arbitration Agreement is applicable and enforceable as to Plaintiff, he concedes that Citibank may nevertheless compel arbitration via the initial Arbitration

6

Agreement.  Pl.'s Opp. to Citibank Mot., ECF No. 27, 1.  Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties.

    **C.  Plaintiff's Dispute with Citibank Falls Within the Scope of the Arbitration Agreement**

"In considering the scope of an arbitration clause's application, U.S. courts have recognized a distinction between 'broad' and 'narrow' language." Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 807 (N.D. Cal. 2004) (quoting Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1463-64 (9th Cir. 1983)).  The rule is that, where an arbitration clause applies to matters "arising under" the agreement, its scope is narrowly defined, but where it applies to matters "arising out of or relating to" the agreement, its application should be broadly construed.  Id.  "[W]hen an arbitration clause refers to disputes or controversies 'under' or 'arising out of' the contract, arbitration is restricted to 'disputes and controversies relating to the interpretation of the contract and matters of performance.'" Mediterranean Enterprises, Inc., 708 F.2d at 1465.

There is no dispute that the initial Arbitration Agreement extends to the bulk of Plaintiff's instant claims against Citibank.  Instead, Plaintiff argues that the Amended Arbitration Agreement should not be enforced against him during arbitration on account that this amendment was made unilaterally and without his knowledge or consent.  Pl.'s Opp. to Citibank Mot., ECF No. 27, at 1.  Citibank, for its part, argues that the Amended Arbitration Agreement is valid and enforceable against Plaintiff under South Dakota Law, which applies here pursuant to the choice-of-law provision in the underlying Card Agreement.  Citibank's Mot., ECF No. 24, at 1.

Despite the parties' contentions concerning the applicable arbitration agreement, the Court need not reach this dispute here.  Since the Court has found the existence of an enforceable arbitration agreement that encompasses parties' dispute, determining if the amendment is enforceable against Plaintiff is a matter for the arbitrator to determine. See Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)

(explaining that the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."); see also Cuadras v. MetroPCS Wireless, Inc., No. CV 09-7897 CAS (AJWx), 2011 WL 11077125, at *7 (C.D. Cal. Aug. 8, 2011) ("[T]he Court finds that plaintiff's arguments regarding the sufficiency of notice of amendments to the [arbitration agreement] implicate the separability doctrine, which requires certain challenges to contracts containing arbitration clauses to be heard by the arbitrator rather than by the court.").

Accordingly, while the Court orders that Plaintiff and Citibank engage in arbitration pursuant to their agreement, it makes no determination on whether the provisions of the Amended Arbitration Agreement apply to Plaintiff.

## CONCLUSION

Citibank's Motion to Compel Arbitration and Stay the Case is GRANTED. ECF No. 24. The litigation is STAYED only as to Plaintiff's claims against Citibank, pending completion of the arbitration. The parties shall submit a joint status report within sixty (60) days of the date this Order is filed, and additional joint status reports each sixty (60) days thereafter. The parties are further directed to notify the Court, in writing, within ten (10) days after an arbitration decision has been rendered.

IT IS SO ORDERED.

Dated: August 20, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE